Filed 4/8/21  Hugg v. Turner CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| LADAWNA MARIE HUGG, | C090288 |
| Plaintiff and Appellant, | (Super. Ct. No. SDR0036286) |
| v. | |
| STEVEN RAY TURNER, | |
| Defendant and Respondent. | |

Ladawna Marie Hugg (mother) appeals from a trial court order in which the trial court found mother was estopped from claiming child support arrearages and denied her request for attorney fees.  Mother argues the trial court erred "as a matter of Law" in its decision.  We conclude no error was made and affirm.

1

BACKGROUND

A

*Procedural Background*

Mother and father share a child who was nine years old at the time of trial. In September 2011, following a judgment of paternity, the parties agreed to an order for guideline child support based on father having 38 percent parenting time. That order required father to pay to mother $1,508 each month in child support, beginning August 25, 2011.

On March 26, 2012, father filed a request for order, seeking equal parenting time and a modification of child support. On May 3, 2012, the parties agreed to a court order that required father to pay to mother $1,214 each month in child support, beginning June 1, 2012, " 'until further order of the court.' "

On May 18, 2012, father filed a request seeking a "return from mediation" hearing as well as an order modifying child support.

On July 10, 2012, the parties agreed to adopt the mediator's recommendations for custody, along with a parenting plan. They also agreed to a "step up" plan to increase father's parenting time until February 25, 2013, at which time the parties would share equal parenting time. In November 2012, that agreement was made an order of the court.

On August 25, 2014, mother sought an order regarding the minor's preschool enrollment. The parties reached agreement on the issue. That agreement also was made an order of the court.

In 2019, the parties shared equal parenting time on a rotating three-day schedule. Now retired, father wanted to change their parenting schedule to a "5-2-2-5 schedule." The parties' child was nine years old, and father suggested to mother the schedule was more age appropriate. The parties would continue to share equal parenting time.

Mother responded to father's request by filing a request seeking unspecified changes to the parenting schedule. She asked to return to mediation regarding a

parenting dispute between the parties. Mother also asked the court to modify the May 3, 2012, order for child support,[1] saying "[Father] without an order from the court changed the amount in 2013 to $1,007 which he has paid the first of every month since."

At the hearing in February 2019, mother told the court she did not want to change the parenting schedule, father did. She acknowledged her request was "initially inspired because [father] was trying to say I couldn't see [our child] on her birthday; but her birthday was yesterday and we worked all that out." The court ordered the parties to mediation on the parenting plan and directed them to meet and confer on the issue of arrearages.

By April 6, 2019, the parties completed their court-ordered child custody recommending counseling. The counselor recommended the parenting plan be changed to a 5-2-2-5 schedule.

On April 11, 2019, mother opened a file with the Sacramento Department of Child Support Services (Department).

On April 22, 2019, mother retained counsel. That same day she filed a declaration with exhibits in support of her claims for arrearages and attorney fees, and addressing discrete issues related to parenting.

On April 23, 2019, the parties, each represented by counsel, appeared before the court to address those few parenting issues, along with the issues of child support arrearages and attorney fees. Initially, mother asked the court to defer ruling on the issue of arrearages until the Department could do a full accounting. Father's attorney advised the court that she spoke with the Department; it was unaware there was a motion on arrearages currently pending in Placer County Superior Court. The Department advised

---

**1**     As noted by the trial court, the order for child support was made on May 3, 2012, but the findings and order after hearing memorializing the order were not signed until September 4, 2012.

father's attorney they would "take no action" on the matter until Placer County Superior Court ruled on the pending motion. The court confirmed the Department was not a party to the case and proceeded with the hearing.

The court explained to mother it was her burden to establish arrearages, including the amount, and invited her to proceed with her motion. Mother's attorney explained the evidence in support of her motion was in the documents she filed the day before, documents which the court had not yet had an opportunity to review. In sum, mother's argument was that father had been paying less than the court-ordered amount of monthly child support.

In response, father argued the parties previously agreed to reduce his monthly child support obligation commensurate with the court-ordered increase in his parenting time. Father relied on that agreement, mother acted in accordance with that agreement for several years, and now that mother was unhappy, she was disavowing that agreement.

The court indicated it could not decide the issue of arrearages without reviewing the documentary evidence submitted by the parties. The court invited both attorneys to submit written arguments in support of their claims. The court indicated it would review the documentary evidence and written arguments and issue a written decision.

On the issue of attorney fees, mother argued that father's income was significantly higher than hers. Thus, under Family Code section 7605, she was entitled to an award of fees. Father disagreed, arguing the fees were generated primarily in pursuit of arrearages, an issue that was entirely of mother's own making. Accordingly, her request for fees should be denied. The court indicated that after reviewing the written evidence and arguments, it would rule on this issue as well.

B

*Evidence*

According to father's declaration, in 2012, mother agreed to a reduction in child support based on father's increased parenting time. Father suggested the parties each

4

have their attorney calculate the reduction in support using the Dissomaster program, leaving their income the same as it was at the time of the prior court order, but increasing father's parenting time. Father's attorney prepared a Dissomaster but mother's attorney did not, so the parties used father's. Pursuant to that agreement, father began paying mother $1,159 per month for child support beginning September 1, 2012.

In March 2013, father's attorney prepared another Dissomaster calculation reflecting another increase in father's parenting time that resulted in the parties sharing equal parenting time. Again, no adjustments were made to the parties' income. Pursuant to that calculation, father began paying mother $1,007 each month in child support.

Following their informal agreement to modify child support, father began preparing an accounting each month and sending it to mother. That accounting reflected the amount of support to which they had agreed, along with numerous offsets approved by mother in advance including ballet lessons, school uniforms, and school pictures. These monthly statements also reflected advances in child support that father had given mother for home improvement projects on her new home. Father provided the court with e-mails regarding these offsets and advances. Father also provided evidence that he agreed to pay for the minor to attend private school.

Prior to 2015, mother was receiving $500 each month from a private insurance disability policy. Then, in 2015, mother opted out of the monthly payments in order to receive a lump sum payment of approximately $70,000. Mother acknowledged she was voluntarily forfeiting the $500 each month by choosing the lump sum payment; she agreed not to seek an increase in support to offset that reduction in her monthly income. After spending a portion of the lump sum payment, mother asked father to hold the remaining funds on her behalf, and to release them to her when she needed the money to purchase her new home. Father agreed.

On April 16, 2019, the parties met to confer on the issue of arrearages. At that meeting, mother advised father and his attorney that she had opened a case with the

5

Department.  It, she said, would be handling the issue of arrearages.  According to father, his attorney asked mother about their prior agreement to reduce child support.  Mother acknowledged their agreement but said "[b]ecause you've requested a change in the parenting plan agreement . . . we no longer have a support agreement."

In her declaration, mother denied ever making an agreement to reduce father's monthly child support obligation.  To support her claim, mother notes that no motion to modify support was ever filed with the court, and no stipulation to modify support was ever executed.  She provided her own "rough draft" accounting from 2013 to March 2019, demonstrating father's failure to pay child support in accordance with the May 3, 2012, support order.  She believed father owed her arrearages "in excess of $14,000."

C

*Findings And Order*

After reviewing the evidence and argument submitted by the parties, the court ruled that mother was "estopped to claim any arrears for past due child support."  The court found "strong circumstantial evidence" of an "informal agreement" to reduce father's monthly child support obligation as his parenting time increased.

In support of its ruling, the court noted the following evidence:  The parenting plan agreed to by the parties in November 2012, included a "step-up approach" to father's parenting time until the parties shared equal parenting time.  Mother's "inaction and failure to protest is highly indicative that she acquiesced to the modification," in particular her failure to raise the issue in 2014 when the parties returned to court on an "unrelated family law issue."  In addition, the court found father relied upon mother's agreement to reduce support, commensurate with the court-ordered increase in his parenting time.

Furthermore, the court determined the reduction in support was "modest," it was "reasonably related to [the] increase in [father's] parenting time," and the minor was not harmed by the reduction.  This, the court indicated, was not a retroactive modification of

6

child support and the parties were invited to "re-calendar the matter" to modify child support based on the parties' current income and custody share.

The court also denied mother's request for attorney fees. In reaching its decision, the court "considered the relative financial positions of the parties and circumstances of the case, including mother's unsuccessful attempt to collect arrears."

Mother appeals from this order.

## DISCUSSION

Appellant contends the trial court erred in finding her estopped from claiming father owed her child support arrearages and in denying her request for needs-based attorney fees under Family Code[2] sections 3557, 3652 and 7605. We find no error.

## I

### *Generally Applicable Legal Principles*

A fundamental rule of appellate review is that " '[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Under the doctrine of implied findings, the appellate court must infer that the trial court made all factual findings necessary to support the judgment. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134.) To avoid application of the doctrine, a party must request a statement of decision. (*Ibid*.) Mother did not request a statement of decision. Accordingly, the doctrine of implied findings applies to her claims on appeal.

---

**2**      Further undesignated statutory references are to the Family Code.

## II

### *Child Support And Equitable Estoppel*

"While it is true that an order for child support may not be retroactively modified ([Fam. Code, § 3651, subd. (c)]) and that accrued arrearages are treated like a judgment for money [citations] it must be remembered that such orders are an exercise of the court's equitable power and are designed to compel satisfaction of the child support obligation which exists apart from the marriage status. The obligation is to the child and not to the mother." (*Jackson v. Jackson* (1975) 51 Cal.App.3d 363, 366-367.)

Relatedly, " '[t]he doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he [or she] intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his [or her] detriment. The elements of the doctrine are that (1) the party to be estopped [here, mother] must be apprised of the facts; (2) he [or she] must intend that his [or her] conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party [here, father] must be ignorant of the true state of facts; and (4) he [or she] must rely upon the conduct to his [or her] injury.' " (*City of Goleta v. Superior Court* (2006) 40 Cal.4th 270, 279.)

### A

### *Standard Of Review*

In general, "[t]he existence of an estoppel is a factual question," and thus the trial court's ruling is reviewed under the substantial evidence standard of review. (*J. H. McKnight Ranch, Inc. v. Franchise Tax Bd.* (2003) 110 Cal.App.4th 978, 991.) "When, . . . , the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling." (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319.) Here, the facts are in dispute. We

8

thus review the court's decision for substantial evidence. (See *J. H. McKnight Ranch, Inc.*, at p. 991.)

B

*Analysis*

The trial court expressly found mother was estopped from claiming any child support arrears, finding she made an informal agreement to reduce father's monthly child support obligation as his parenting time increased.

In reaching that decision, and on this record, we must presume the trial court also found mother was "apprised of" this informal agreement and acted in a way that father had a right to believe her conduct would be acted upon. (See *In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at pp. 1133-1134 [without a statement of decision we must infer findings in favor of the judgment]; see also *City of Goleta v. Superior Court*, *supra*, 40 Cal.4th at p. 279 [elements of equitable estoppel].)

On this record, there is substantial and uncontroverted evidence that mother repeatedly, and for years, chose not to pursue enforcement of the trial court's May 3, 2012, support order, the order for which she is now seeking arrearages. She did not raise the issue with the court despite making several appearances related to the parties' minor child. Mother never challenged father regarding the monthly memoranda he sent calculating the monthly support amount, including agreed-upon offsets and advances. Thus, the evidence of mother's conduct supports the implied finding that mother was "apprised of" the parties' informal agreement to reduce child support.

We also must presume the trial court found father to be ignorant of the fact that mother did not intend to abide by their informal agreement. (See *In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at pp. 1133-1134; see also *City of Goleta v. Superior Court*, *supra*, 40 Cal.4th at p. 279.) Father paid the reduced child support for approximately seven years without seeking a formal court order. Had father known mother would accept the reduced child support payments for years, then disavow the agreement after

9

accruing thousands of dollars in arrearages and interest, it is reasonable to presume father would have secured a court order modifying support.

And, finally, we must presume the trial court found father relied upon mother's conduct to his injury. (See *In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at pp. 1133-1134; see also *City of Goleta v. Superior Court*, *supra*, 40 Cal.4th at p. 279.) Father's injury is apparent in the record: mother was seeking approximately $14,000 in child support arrearages, plus interest. Mother's efforts to collect on this large sum of money would be difficult for father, particularly now that he was retired and committed to paying for their child's private school education.

In sum, we conclude the court's findings are supported by substantial evidence; we find no error.

III

*Attorney Fees*

Mother sought needs-based attorney fees in the trial court under sections 3557, 3652, and 7605. The court denied her request. We find no error.

Needs-based attorney fees under sections 3557 or 7605, are authorized only if the fees incurred are determined to be "reasonable." (§ 3557, subd. (a) ["shall award reasonable attorney fees . . ."]; § 7605 ["whatever amount is reasonably necessary for attorney's fees . . ."]; *Kevin Q. v. Lauren W.* (2011) ["section 7605, subdivision (a) authorizes awards only for 'reasonably necessary' fees"].) We review a denial of needs-based attorney fees for abuse of discretion. (*In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 447.)

Here, the trial court considered the parties' relative financial circumstances and the circumstances of the case and denied mother's request for needs-based fees. In reaching its decision, the court noted mother's "unsuccessful attempt to collect arrears." As discussed above, that unsuccessful attempt to collect arrears was solely the result of

10

mother disavowing an agreement she made with father years earlier to reduce his monthly child support obligation.

Assuming, as we must, that the trial court's findings support the decision rendered, we presume the trial court's reference to mother's unsuccessful attempt to collect arrears means the court found the fees she sought were not reasonable under the circumstances. (See *Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564 [all intendments and presumptions indulged to support order of the lower court on matters as to which the record is silent].)

In addition, attorney fees under section 3652 are awarded only to the prevailing party. (§ 3652 ["an order modifying, terminating, or setting aside a support order may include an award of attorney's fees and court costs to the prevailing party."].) Mother was not the prevailing party. Thus, she was not entitled to fees under section 3652.

In sum, on this record, we conclude the trial court did not abuse its discretion in denying mother's request for attorney fees.

DISPOSITION

The order of the court is affirmed. Father shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/_____
Robie, J.

We concur:


/s/_____
Hull, Acting P. J.


/s/_____
Murray, J.

11